Pearson, J.
 

 We
 
 fully concur in the instructions given by his Honor. The threat of Fanny, a short time before, to
 
 fight
 
 the overseer, if he attempted to whip her — the relation of the parties, and their conduct at the time of the homicide — was evidence tending to show a preconceived purpose on their part to resist the overseer, if he should attempt to whip Fanny. The j/itry having negatived this fact by the acquittal of Mack, we are to assume that there was no such preconceived common purpose. But in respect to the prisoner, David, we are to assume from the verdict that he approached the deceased with an intention to assist Fanny in her resistance, and to
 
 do it
 
 by'violence,
 
 if need be, reckless of the consequences.
 

 We
 
 are of opinion that this intention, accompanied by the
 
 overt act
 
 of advancing upon the deceased, although formed at the instant, and not preconceived, brings upon the prisoner
 
 *358
 
 the guilt of murder. Resistance to the master is a species of petit treason, and the mind of a slave who commits it, must be wrought up to desperation, and “ fatally bent on mischief.” The master not only has the right, but it is his duty, to overcome it at all hazzards. The slave knows this, and the spirit of insubordination that raises an arm in resistance, must be reckless of the consequences. If, in this state of things, another slave advances with an intention to take part, and aid in such resistance, he is alike desperate, and fatally bent on mischief. If the prisoner had caught the deceased by the arms, and held him, while the woman struck the fatal blow, his guilt could not be questioned. His interference produced the same result. By his approach it was made necessary for the 'deceased to turn and strike him. Thus the deceased was put off of his guard, and exposed to the blow. The accident that the prisoner was knocked down and disabled at the outset, can in no wise relieve him of the consequences of his unlawful act.
 

 It is unnecessary to say how far the prisoner’s guilt would have been mitigated, had the deceased been in the act of inflicting upon the woman any grievous or cruel injury, because there was no evidence that such was the case; on the contrary, the deceased was doing no more than what he ought to have done much sooner.
 

 Unconditional submission on the part of slaves must be exacted. If, while one is in the act of resistance, another may come up and give aid, without involving himself in the guilt, the consequences would be awful.
 

 His Honor very properly refused to permit any analogy to be drawn from the law in regard to free persons. It could furnish none in reference to the guilt of slaves where life is taken in the act of resistance to the master.
 

 "We agree with his Honor in regard to the rule of practice which he enforced, and to which the prisoner’s counsel excepts. As the prisoner offered no evidence, he was entitled to the conclusion, but it was proper that his counsel should be required to state the grounds upon which a conviction was resisted,
 
 *359
 
 in order to give the counsel for the State an opportunity of replying to it. Common fairness suggests that this is the proper course. Otherwise the State.would be taken wholly at a disadvantage, and the prisoner’s counsel might suggest views of the case, and draw inferences from the evidence, which would go to the jury unanswered, unless the ¡^residing Judge should feel himself called upon to notice them. This would be objectionable. The proper rule is, that the party having a right to conclude, opens the argument; the opposite party then has an opportunity to reply, and he, in his turn, may reply, by way of conclusion. There is no error.
 

 Pee Cuexam. Judgment affirmed.